Helen Louise ROGERS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16586.

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1971.

Terry L. Meltzer, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Helen Louise Rogers, hereinafter referred to as defendant, pleaded guilty to two charges of Grand Larceny in the District Court and received a concurrent thirty-month sentence in each case. The court suspended the sentence and placed the defendant under the supervision of the probation office. An application to revoke the suspended sentences was filed, and upon hearing said application on March 15, 1971, the court ordered that the suspended sentences be revoked, and from said order, a timely appeal has been perfected to this court.

At the revocation hearing, Officer McCraken testified that on the evening of February 13, 1971, that he and Officer Um-

holtz and two Civil Defense officers went to a tavern in Tulsa to check on prostitutes. He and Officer Umholtz remained outside while Lloyd Umber and Pete Newport went inside. Newport subsequently emerged with one Betty Pitts, who broke and ran. The defendant was arrested by Lloyd Umber.

Lloyd Umber testified that on February 3, 1971, he was working as an agent of the police department. He entered the club with Newport. The defendant was sitting on the pool table, and he asked her if she wanted to play pool. While they were playing pool Betty Pitts approached Newport and escorted him to the back room. After a few minutes, they came out, and Betty Pitts gave the bartender some money, out of which he gave her some change. She got her coat, a flashlight, and a box of rags, and they started to leave the bar. Umber asked Newport if he wanted a partner to go with him. At this point, the defendant stated, "He don't need a partner, but I do" (Tr. 22). He asked the defendant where they were going, and she replied that there were some rooms out behind. He asked her if there was room for two more, and she said, "Yes, have you got $12.00?" He handed her the $12.00; she gave the bartender $2.00, got her coat and a flashlight, and they left the bar. He placed her under arrest after they got outside. The defendant asked him if they could not make some arrangement or a deal.

The defendant testified that she worked for Mr. and Mrs. Tom Patton, who had dropped her off at the club while they ran some errands. She had never been in the club before, and she was eating a sandwich as the two men came into the club. Umber asked her to play pool and she agreed. Another girl who was in the club, and the man who came in with Umber talked for a short time and left together. She heard a commotion outside, Umber pushed her outside, and said that she was under arrest. She denied accepting any money from Umber. She admitted that she knew it was a violation of her probation to be in the bar. (Tr. 44).

The first proposition asserts that the application to revoke the suspended sentences fails to state the grounds for revocation. The application states the grounds as follows.

"The court is further informed that the defendant, Helen Louise Rogers, has subsequently failed to comply with the terms of her suspended sentence: That said defendant was arrested by Tulsa Police officers on February 3, 1971, for the crime of Lewdness by Prostitution. That on the third day of February, 1971, Helen Louise Rogers was inside of a beer tavern called Bill's Place at 3203 N. Harvard."

The defendant argues that there is no allegation that she committed the crime of prostitution, but rather that she was merely arrested, and that she could not have anticipated that the evidence would be introduced tending to show the commission of a crime, and hence, could not have prepared a defense thereto.

We are of the opinion that the grounds stated in the application were sufficient to advise the defendant as to the basis that the State was requesting the court to revoke the suspended sentence. It is apparent that the defendant was apprised of what the State intended to attempt to prove. Prior to the hearing, the court made the following statement:

"Do we agree that the Court can make the statement that there are criminal charges filed in Municipal Court against the defendant and that the Court has previously notified counsel that if the revocation proceeding is dependent upon a conviction or if the gravum [sic] of the revocation is the criminal offense which is still pending, the Court will entertain a motion for a continuance and counsel for defendant states that he is desirous of a speedy trial and that he desires an early opportunity to proceed and the criminal charge is pending in Municipal Court on a date set approximately two months hence."

We further observe that the defendant had not requested a continuance at the

start of hearing, nor did she request a continuance after hearing the State's evidence. Certainly, if the defendant was surprised at the evidence introduced by the State, and had, in fact, rebuttal witnesses, she would have requested a continuance.

In the case of In re Collyar, Okl.Cr., 476 P.2d 354, Judge Brett stated:

"In reaching a decision in this case, we do not hold that a person, whose suspended sentence is being revoked, is entitled to receive the full scope of constitutional due process at the hearing on an application to revoke; but we do believe that such hearing should reflect fundamental considerations of fairness."

We are of the opinion that the proceedings at the revocation hearings were conducted with fundamental fairness to the defendant. We therefore find the proposition to be without merit.

■ The final proposition contends that the findings of the trial court, upon which the order revoking defendant's suspended sentence was based, are not supported by the evidence. After hearing the evidence, the trial court stated:

"THE COURT: Now the defendant, on her own admission, of course, states that she was in this place. I don't know, of course, whether that standing alone—I don't know if that would be sufficient to cause the revocation of her probation. Officer McCraken and Mr. Lloyd Umber who was previously connected with or still is connected with Civil Defense testified and his testimony illustrates that he, acting as a private citizen, the agent of the officers—states that he went into the establishment where the defendant was present, he approached her to play a game of pool and that they were engaged in playing pool and that the Court finds that from the evidence, although contradicted by the defendant, that the defendant did make herself available to Mr. Umber as a prostitute and that she offered and received funds for her services, that the Court, having previously told the defendant that the two felony cases concerned the use of her body for the gaining of monies on two separate felony cases in which she entered a plea of guilty, by the fact that she would steal money from the pockets of her prospective clients and the Court, considering all the testimony and admonitions previously given at the time of the plea of guilty, finds that the defendant did violate the terms of her probation and that the probation is hereby revoked and the defendant is remanded to the custody of the warden of the Oklahoma State Penitentiary to serve her sentence which is in the nature of some—the total time to be served is some thirty months. Of course, you'll be given credit for all the time previously spent in jail awaiting trial.

Helen Louise Rogers, you have had chance after chance and the Court told you that all you had to do was be a law-abiding citizen.

THE DEFENDANT: But, Your Honor, I worked hard and I changed and I know it was wrong for being in that place.

THE COURT: I am not revoking you for being in a place where beer was sold. That's all." (Tr. 45–47)

The defendant argues that, taking the State's evidence in the best light, all the defendant did was to accept $12.00, to be Umber's "partner." She argues that it is illogical and ridiculous to conclude that "partner" meant "partner in a sexual relationship." We cannot argue with this contention. We are of the opinion that the trial court considering the totality of the circumstances properly concluded that the defendant offered herself as a prostitute. We observe that the court was aware of the defendant's past improprieties as a prostitute. The defendant's modus operandi was similar to that of Betty Pitts, who was arrested for prostitution. They both accepted money, gave some to the bartender, put on their coats, got flashlights, and left with the men, intending to go to a room behind the club. We do not deem it illogical to conclude that the de-

fendant's purpose of going to the room under such circumstances was to engage in sexual intercourse. We therefore find this proposition to be without merit. The order revoking the judgments and sentences is accordingly affirmed.

BRETT and NIX, JJ., concur.